## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| **MARK LOWE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. **3:20CV390** |
| | ) | |
| **HAROLD CLARKE, *et.al.*,** | ) | |
| | ) | |
| Defendants. | ) | |

### <u>MEMORANDUM OPINION</u>
### (Dismissing Action with Prejudice)

Mark Madison Lowe, a Virginia inmate, proceeding *pro se* and *in forma pauperis*

filed this 42 U.S.C. § 1983 action. The matter is now before the Court for the evaluation

of Lowe's Second Particularized Complaint (ECF No. 38) pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A.[1] For the reasons set forth below, the action will be dismissed

for failure to state a claim and because it is legally and factually frivolous.

### I.       PRELIMINARY MOTIONS

After filing his Second Particularized Complaint, Lowe filed a Motion for Leave

to Proceed in Forma Pauperis (ECF No. 48), a Motion for a Certificate of Appealability

(ECF No. 49), and a letter requesting the disqualification of the undersigned Judge (ECF

No. 50). As a preliminary matter, the United States Court of Appeals for the Fourth

Circuit has already granted Lowe the ability to proceed *in forma pauperis* on appeal, and

---

[1] In his Second Particularized Complaint, Lowe names only Harold Clarke and Major David Hamlette as Defendants. Therefore, the Clerk is directed to amend the caption as reflected above.

a certificate of appealability is not applicable or needed in a civil rights action.

Accordingly, Lowe's Motion for Leave to Proceed in Forma Pauperis (ECF No. 48), and

Motion for Certificate of Appealability (ECF No. 49) will be denied.

In his request for disqualification, Lowe contends that he has named the

undersigned Judge in a different complaint pending before the Court and contends that

"[t]he law requires disqualification." (ECF No. 50, at 1.)[2] Plainly put, it does not. Lowe

contends that "[o]fficers of the Court failed to take action after I gave notice of a

conspiracy to disrupt Presidential Elections," which is apparently the subject of the

complaint that names the undersigned Judge. (*Id.*) Despite Lowe's beliefs to the

contrary, the bar for disqualification or recusal is high, as "courts have only granted

recusal motions in cases involving particularly egregious conduct." *Belue v. Leventhal*,

640 F.3d 567, 573 (4th Cir. 2011). The undersigned Judge discerns no reason to recuse

himself based on Lowe's allegations. Lowe has not demonstrated that the Court harbors

any bias against him or any circumstance where the impartiality of the undersigned Judge

---

[2] The Court employs the pagination assigned by the CM/ECF docketing system for references to the record.

might be reasonably questioned.  *See* 28 U.S.C. §§ 144,[3] 455.[4]  Accordingly, Lowe's

request for recusal or disqualification (ECF No. 50) will be denied.

## II.   PROCEDURAL HISTORY

By Memorandum Order entered on December 3, 2020, the Court directed Lowe

to file a particularized complaint within thirty (30) days of the date of entry thereof.  The

Court directed Lowe as follows:

> In order to state a viable claim under 42 U.S.C. § 1983,[5] a plaintiff
> must allege that a person acting under color of state law deprived him or her

---

[3] The statute provides, in relevant part:

> Whenever a party to a proceeding in a district court makes and files a timely
> and sufficient affidavit that the judge before whom the matter is pending has a
> personal bias or prejudice either against him or in favor of any adverse party, such
> judge shall proceed no further therein, but another judge shall be assigned to hear
> such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or
> prejudice exists . . . . A party may file only one such affidavit in any case.  It shall
> be accompanied by a certificate of counsel of record stating that it is made in good
> faith.

28 U.S.C. § 144.

[4] The statute provides, in relevant part:

> **(a)** Any justice, judge, or magistrate judge of the United States shall disqualify
> himself in any proceeding in which his impartiality might reasonably be questioned.
> **(b)** He shall also disqualify himself in the following circumstances:
>    **(1)** Where he has a personal bias or prejudice concerning a party, or personal
>    knowledge of disputed evidentiary facts concerning the proceeding . . . .

28 U.S.C. § 455.

[5] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects,
> or causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). Courts must liberally construe *pro se* civil rights complaints in order to address constitutional deprivations. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Plaintiff's current rambling and repetitive allegations also fail to provide each defendant with fair notice of the facts and legal basis upon which his or her liability rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Accordingly, Plaintiff is DIRECTED, within thirty (30) days of the date of entry hereof, to particularize his complaint in conformance with the following directions and in the order set forth below:

      a.     At the very top of the particularized pleading, Plaintiff is directed to place the following caption in all capital letters "PARTICULARIZED COMPLAINT FOR CIVIL ACTION NUMBER 3:20CV390."

      b.     The first paragraph of the particularized pleading must contain a list of defendants. Thereafter, in the body of the particularized complaint, Plaintiff must set forth legibly, in separately numbered paragraphs, a short statement of the facts giving rise to his claims for relief. Thereafter, in separately captioned sections, Plaintiff must clearly identify each civil right violated. Under each section, the Plaintiff must list each defendant purportedly liable under that legal theory and explain why he believes each defendant is liable to him. Such explanation should reference the specific numbered factual paragraphs in the body of the particularized complaint that support that assertion. Plaintiff shall also include a prayer for relief.

      c.     The particularized pleading will supplant the prior complaints. The particularized pleading must stand or fall of its own accord. Plaintiff may not reference statements in the prior complaints.

**FAILURE TO COMPLY WITH THE FOREGOING DIRECTIONS WILL RESULT IN DISMISSAL OF THE ACTION.** *See* Fed. R. Civ. P. 41(b).

---

secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

Federal Rule of Civil Procedure 18(a) provides that: "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Nevertheless, when a plaintiff seeks to bring multiple claims against multiple defendants, he must also satisfy Federal Rule of Civil Procedure 20 which provides:

> **(2) *Defendants.*** Persons . . . may be joined in one action as defendants if:
>
> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> **(B)** any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). "Rule 20 does not authorize a plaintiff to add claims 'against different parties [that] present[ ] entirely different factual and legal issues.'" *Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008) (alterations in original) (quoting *Lovelace v. Lee*, No. 7:03CV00395, 2007 WL 3069660, at *1 (W.D. Va. Oct. 21, 2007)). Accordingly, Plaintiff's Particularized Complaint must also comport with the joinder requirements. If Plaintiff fails to submit an appropriate Particularized Complaint that comports with the joinder requirements, the Court will drop all defendants not properly joined with the first named defendant.

(ECF No. 23, at 1–3.)  Lowe filed a Particularized Complaint on December 28, 2020.

(ECF No. 27.)  However, the Particularized Complaint failed to comply with the

directives of the Court.  By Memorandum Order entered on March 19, 2021, the Court

explained that it could not discern what legal claims for relief Lowe alleged against each

Defendant or what facts supported each claim.  (ECF No. 34, at 2.)  The Court also

explained that, the Particularized Complaint was entirely disjointed and failed to comply

with Federal Rule of Civil Procedure Rule 8(a).[6]  (*Id.*)  Accordingly, the Court directed

---

[6] That rule provides:

> **(a) Claim for Relief.**  A pleading that states a claim for relief must contain:

5

Lowe to file a second particularized complaint. (*Id.* at 3–4.) The Court explained that

the second particularized complaint must conform with the following directions and in

the order set forth below:

> a.     At the very top of the particularized pleading, Plaintiff is directed to place the following caption in all capital letters "SECOND PARTICULARIZED COMPLAINT FOR CIVIL ACTION NUMBER 3:20CV390."
> b.     The first paragraph of the particularized pleading must contain a list of defendants.
> c.     In the second paragraph, Plaintiff must set forth legibly, a short narrative statement of the facts that he believes gives rise to his claims for relief. This means he must provide a description or recount the story of the event or actions that led to him bringing this lawsuit. Plaintiff must state how each Defendant was personally involved in the events he describes.
> d.     In the third paragraph, Plaintiff must identify each civil right violated. Under each section, the Plaintiff must list each defendant purportedly liable under that legal theory and explain why he believes each defendant is liable to him. This means Plaintiff must clearly state why he believes that each Defendant violated his constitutional rights based on the facts he has provided. Such explanation should reference the specific numbered factual paragraphs in the body of the particularized complaint that support that assertion.
> e.     Finally, Plaintiff must include a prayer for relief meaning.
> f.     The particularized pleading will supplant the prior complaints. This means this Second Particularized Complaint will REPLACE any earlier complaint so Plaintiff must include any claim or allegation that he wants the Court to consider. The particularized pleading must stand or fall of its own accord. This means Plaintiff may not reference statements in the prior complaints.

---

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a). The Court noted that Plaintiff's rambling submission were neither short nor plain and did not show that Plaintiff was entitled to relief. (ECF No. 34, at 3.)

**FAILURE TO COMPLY WITH THE FOREGOING DIRECTIONS
WILL RESULT IN DISMISSAL OF THE ACTION.** *See* Fed. R. Civ.
P. 41(b).

(*Id.* at 4.)  On April 5, 2021, the Court received Lowe's Second Particularized Complaint.

("Complaint," ECF No. 38.)  Lowe failed to label it as a "Second" Particularized

Complaint and clearly disregarded the Court's instructions for the order in which his

particularized complaint should be organized, instead choosing his own manner of

presentation.  As discussed in greater detail below, Lowe's Complaint is lengthy,

disjointed, and fails to comply with the Court's directives, but also fails to state a claim

and is legally and factually frivolous.

### III.   PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss

any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2)

"fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2); *see* 28

U.S.C. § 1915A.  The first standard includes claims based upon "an indisputably

meritless legal theory," or claims where the "factual contentions are clearly baseless."

*Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490

U.S. 319, 327 (1989)).  The second standard is the familiar standard for a motion to

dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or

the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952

(4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324

F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th

Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).  Lastly, while the

Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th

Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and

constitutional claims that the inmate failed to clearly raise on the face of his complaint.

*See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett*

*v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV.    LOWE'S ALLEGATIONS AND CLAIMS

In his Complaint, Lowe complains about nearly every facet of the conditions of his

confinement while he was housed in the Baskerville Correctional Center.[7]  Because of the

disjointed manner in which Lowe has presented his claims, the Court has difficulty

assessing them.  First, Lowe has a section of what he calls claims (Claims I through X),

that contain no actual constitutional claims for relief, but appear instead to state facts.

(ECF No. 38, at 2–9.)  This section is followed by a section called, "CIVIL RIGHTS

VIOLATED," where Lowe merely restates what protections the Eighth and Fourteenth

Amendment provide to inmates.  (*Id.* at 9.)  On the following page, Lowe states his

claims a second time.  This section appears to consist solely of argument in support of his

claims that reference several "Facts" that were presented in his first statement of his

claims.  (*Id.* at 10–15.)  Lowe also has random facts and allegations scattered throughout

---

[7] Lowe indicates that he was transferred to the Lunenburg Corrections Center in August 2020, and that he was housed in Baskerville "[d]uring the prior 3 years."  (ECF No. 38, at 3.)

sections that are not identified by claim. The Court utilizes Lowe's second restatement of his claims for the purposes of this opinion and omits repetitive portions.

Lowe names Harold Clarke, the Director of the Department of Corrections, and Major David Hamlette, the Chief of Security at Baskerville Correctional Center, as Defendants. (*Id.* at 2, 15.) As a preliminary matter, Lowe contends that "Major David Hamlette implemented (5) five conditions which are consistent with or identical to the operation of boot camps" and that "[e]ach condition is set as a separate claim for this court to review objectively." (*Id.* at 4.) Lowe provides as follows:[8]

> Claim I
> Fact #10.  Major David Hamlette published a policy which required the Baskerville Corrections staff to search and seize all blankets, coats, and protective clothing [in violation of the Eighth Amendment and] . . . Department of Corrections internal policy 802.1. . . . Harold Clarke is liable for the actions and decisions of Major David Hamlette.  Harold Clarke is responsible for the uniform enforcement of laws which protect prisoners. . . .
>
> Claim II
> Fact #11.  Major David Hamlette implemented a punitive full lighting and sleep deprivation program.  The lights in dorms were maintained for more than 24 hours after fights and security incidents which did not involve the entire population of prisoners. . . .
> The staff has violated the 8th and 14th Amendment rights of Mark Lowe.
>
> Claim III
> Fact #14.  Salt and basic quantities or qualities of food were denied to prisoners.  The denial of food was used as a punitive measure[] and punishment.  The petitioner gave notice to Harold Clarke's Office and the Department of Corrections through the internal grievance process.  Harold Clarke is liable for coordinated attacks, plans, conspiracies, and actions of staff which deny civil rights.  The staff has violated the 8th and 14th Amendment rights of Mark Lowe.

---

[8] The Court corrects the punctuation, capitalization, and omits some paragraph structure from Lowe's Complaint.

Claim IV
Major David Hamlette reduced outside exercise below the minimum mandatory allotment of 1 hour per day. . . .  Major David Hamlette denied Mark Lowe outside exercise for more than 45 consecutive days [during the pandemic].  The pandemic was opportunistically used to deny the civil rights of prisoners. . . .  In addition to the denial of outside exercise, the Baskerville Corrections staff disabled the ventilation system as a punitive measure after a small fight. . . .  The prisoners who were not involved in the altercation were forced to stay inside the building without ventilation. . . .  Harold Clarke is responsible and liable when two or more Department of Corrections employees conspire to violate the civil rights of prisoners.

Claim V
Fact#16–19.  Major David Hamlette took constructive measure to retaliate against Mark Lowe. . . .  The staff has violated the 8th and 14th Amendment rights of Mark Lowe.  Major David Hamlette denied Mark Lowe access to toilet paper as a punitive, perverse, juvenile, racist, and retaliatory measure. In addition to the uniform searches for weapons or drugs, the staff searched Mark Lowe's living area between 12:00 am and 5 am for toilet paper.  Toilet paper is not categorized as [a] weapon or security threat by the Department of Corrections.  Toilet paper searches are not part of a tenable security objective when one individual is targeted. . . .

Claim VI
Fact #29–30.  On or about April 17, 2019, Lt. Thomas and Officer Crutchfield denied Mark Lowe access to a diabetic meal.  The officers were implementing physical retaliation and violating Title II of the Americans with Disabilities Act 42 U.S.C. § 12131.  Harold Clarke, the Director for the Department of Corrections, is liable for the officers' actions and discrimination.

Claim VII
Fact #31.  On November 11, 2019, Officer Jordan searched the living area of Mark Lowe.  The November 11, 2019 search was a sleep deprivation tactic implemented in Baskerville Corrections.  Harold Clarke, Director of the Department of Corrections is liable for retaliatory measures.

Claim VIII
Fact #5.  Major David Hamlette opportunistically took constructive measures to infect prisoners with COVID–19 [in violation of the Eighth Amendment]. The Department of Corrections distributed improvised cloth masks to prisoners.  The April 1, 2020, Department of Corrections memorandum does not authorize Major David Hamlette to implement group laundry services for

mask[s]. Major David Hamlette distributed mask[s] and personally collected mask[s] to wash as a group in a washing machine. Used mask were redistributed to prisoners. The used mask was tainted with the COVID–19 virus. The "Pure Wash Eco Friendly Laundry" system implemented by the Department of Corrections does not use detergent to remove viruses from cloth. Major David Hamlette knowingly and willingly infected almost 70% of prison population with COVID–19. Prisoners were locked in a single room and used or infected cloth mask[s] were distributed for usage. The dorms were turned into human incubation rooms like a Nazi concentration camp. Harold Clarke is liable for the actions of Major David Hamlette. . . .

Claim IX
Fact #43–46, The administrative staff denied Mark Lowe access to building 3B. The staff did not enforce sleep deprivation in building 3B. Building 3B contained a large number of white prisoners or former law enforcement. A separate and unequal system of segregation was implemented at Baskerville Corrections Center. The staff violated the 8th and 14th Amendment rights of Mark Lowe. Harold Clarke, the Director, is liable.

Claim X
Fact #47. On July 31, 2020, Mark Lowe was struck from behind with a combination lock by the senior gang member in the building. A gang member waited until security staff arrived in force and struck Mark Lowe from behind with instructions to stay quiet. Mark Lowe was contacting outside resources and confronting deteriorating conditions at Baskerville Corrections. The individual who assaulted and malicious[ly] wounded Mark Lowe believed he would not be charged with a crime or prosecuted. The individual believed he was a proxy for Major David Hamlette, the Chief of Security. . . . The assault on Mark Lowe broke his jaw and was an act of conspiracy. . . . Harold Clarke is liable and responsible for the safety of Mark Lowe. The assault was an action taken to deny equal protection.

(*Id.* at 10–14.) Lowe requests monetary damages, declaratory judgment, and an

injunction. (*Id.* at 14.)

## V.   ANALYSIS

It is both unnecessary and inappropriate to engage in an extended discussion of

Lowe's theories for relief. *See Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996)

(emphasizing that "abbreviated treatment" is consistent with Congress's vision for the

disposition of frivolous or "insubstantial claims" (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989))). Section 1915(d), "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). The statement that a court has "the authority to 'pierce the veil of the complaint's factual allegations' means that a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quoting *Neitzke*, 490 U.S. at 327). A court need not "accept as 'having an arguable basis in fact,' . . . all allegations that cannot be rebutted by judicially noticeable facts." *Id.* (quoting *Neitzke*, 490 U.S. at 325). The Court "may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless' . . . a category encompassing allegations that are 'fanciful,' . . . 'fantastic,' . . . and 'delusional.'" *Id.* at 32–33 (quoting *Neitzke*, 490 U.S. at 325, 327–28).

As a matter of context, and because Lowe does not provide specific dates, the Court notes that the original complaint was filed in June 2020, and the allegations contained therein, and in Lowe's subsequent complaint, stem from the early months of the COVID–19 pandemic. As discussed below, the majority of Lowe's claims either fail to state a claim for relief or are frivolous as they "lack[] an arguable basis [both] in law [and] in fact." *Neitzke*, 490 U.S. at 325.

### A.   Any Request for Injunctive Relief is Moot

Lowe clearly indicates that he was transferred to the Lunenburg Correctional

Center in August 2020.  (ECF No. 38, at 2.)  "[A]s a general rule, a prisoner's transfer or

release from a particular prison moots his claims for injunctive and declaratory relief with

respect to his incarceration there."  *See Rendelman v. Rouse*, 569 F .3d 182, 186 (4th Cir.

2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir.2007); *Williams v.

Griffin*, 952 F.2d 820, 823 (4th Cir.1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th

Cir. 1986).  Accordingly, Lowe's request for injunctive relief will be dismissed as moot.

### B.   Eighth Amendment Standard

To allege an Eighth Amendment claim, an inmate must allege facts that indicate

(1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,'

and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of

mind.'"  *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v.

Seiter*, 501 U.S. 294, 298 (1991)).  Under the objective prong, the inmate must allege

facts to suggest that the deprivation complained of was extreme and amounted to more

than the "routine discomfort" that is "part of the penalty that criminal offenders pay for

their offenses against society."  *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).  "Only extreme deprivations are adequate to

satisfy the objective component of an Eighth Amendment claim regarding conditions of

confinement."  *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (citation

omitted).  To demonstrate such extreme deprivation, Lowe "must allege 'a serious or

significant physical or emotional injury resulting from the challenged conditions.'" *Id.* at

634 (quoting *Strickler*, 989 F.2d at 1381).

The subjective prong requires the plaintiff to allege facts that indicate a particular

defendant acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837

(1994). "Deliberate indifference is a very high standard—a showing of mere negligence

will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v.*

*Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for
> denying an inmate humane conditions of confinement unless the official
> knows of and disregards an excessive risk to inmate health or safety; the
> official must both be aware of facts from which the inference could be drawn
> that a substantial risk of serious harm exists, and he must also draw the
> inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a

substantial risk of harm is not enough. The prison official must also draw the inference

between those general facts and the specific risk of harm confronting the inmate."

*Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d

336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion to dismiss, the

deliberate indifference standard requires a plaintiff to assert facts sufficient to form an

inference that "the official in question subjectively recognized a substantial risk of harm"

and "that the official in question subjectively recognized that his actions were

'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303

(4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

15

## C.    No Personal Liability of Defendant Clarke

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that

a person acting under color of state law deprived him or her of a constitutional right or of

a right conferred by a law of the United States. *See Dowe v. Total Action Against*

*Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "Government officials

may not be held liable for the unconstitutional conduct of their subordinates under a

theory of *respondeat superior.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citations

omitted).   To state a legally sufficient claim for an alleged violation of a federal

constitutional right, "[a] plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution." *Id.*

Accordingly, the plaintiff must allege facts that affirmatively show "that the official

charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*,

550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*,

275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each

defendant's own constitutional violations").

The Court previously warned Lowe that he must plead facts that plausibly suggest

each Defendant's personal involvement in the Eighth Amendment violation.  He fails to

do so in the Complaint before the Court.  Lowe fails to identify facts that plausibly

suggest that Defendant Clarke, as the Director of the Virginia Department of Corrections,

had any personal involvement in the deprivation of Lowe's rights.  Rather, Lowe

attempts to impose liability on Defendant Clarke solely because he is the Director and

based entirely on *respondeat superior*.  For example, Lowe repeatedly states that Harold

16

Clarke "is liable for the actions and decisions of Major David Hamlette" (ECF No. 38, at 10; *see id.* at 13), that he "is responsible and liable when two or more Department of Corrections employees conspire to violate the civil rights of prisoners" (*id.* at 11), and that he is just "liable." (*Id.* at 12, 13) To the extent that Lowe believes that Defendant Clarke should be held liable under a theory of *respondeat superior* simply based on his position, he fails to state a claim for relief. *Iqbal*, 556 U.S. at 676.[9]

In one instance, Lowe alleges that Defendant Clarke may have been involved beyond a theory of *respondeat superior.* In Claim III, Lowe alleges that "[s]alt and basic quantities and qualities of food were denied to prisoners." (*Id.* at 11.) Lowe contends that he "gave notice to Harold Clarke's Office and the Department of Corrections" of his complaints "through the internal grievance process." (*Id.*) To the extent Lowe seeks to hold Defendant Clarke liable simply because his "Office" may have been involved in the internal grievance review process, Lowe's conclusory allegations fail to state a claim.

An inmate may establish that a prison administrator is liable under § 1983 for a grievance or letter, if he alleges facts that indicate "that the communication, in its content

---

[9] To the extent that Lowe contends that Defendant Clarke is somehow liable on a theory of supervisory liability, that claim would fail. To show that a supervising officer failed to fulfill his duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show that:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted) (citations omitted). Lowe fails to allege facts that support any one of these three factors.

and manner of transmission, gave the prison official sufficient notice to alert him or her

to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th

Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Thus, Lowe must

allege that Defendant Clarke "knew of a constitutional deprivation and approved it,

turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id.*

at 994 (citing *Gentry v. Duckworth*, 65 F .3d 555, 561 (7th Cir. 1995)). Lowe merely

contends he placed "Harold Clarke's Office" on notice of his complaints. Lowe's

allegations fall short of permitting the conclusion that he placed Defendant Clarke on

sufficient notice of an excessive risk of harm to Lowe through the grievance process.[10]

Lowe's complaint amounts to nothing "more than . . . unadorned, the defendant-

unlawfully-harmed-me accusation[s]," against Defendant Clarke that are insufficient to

state a claim for relief. *Iqbal*, 566 U.S. at 678. Because Lowe fails to allege facts

indicating that Defendant Clarke was personally involved in the deprivation of Lowe's

---

[10] Additionally, "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017); *see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Because Lowe enjoys no constitutional right to participate in grievance proceedings, any allegation that Defendant Clarke improperly upheld his grievance on appeal would be legally frivolous. *See Banks v. Nagle*, Nos. 3:07-cv-419, 3:09-cv-14, 2009 WL 1209031, at *3 (E.D. Va. May 1, 2009) (citation omitted); *see also DePaola v. Ray*, No. 7:12-cv-00139, 2013 WL4451236, at *8 (W.D. Va. July 22, 2013) (citation omitted) (observing that "a supervisor's after–the–fact denial of a grievance falls short of establishing § 1983 liability"). Indeed, simply "[r]uling against a prisoner does not cause or contribute to the [constitutional] violation." *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007); *cf. Chamberlain v. Clarke,* No. 7:14-cv-00013, 2014 WL 2154183, *3 (W.D. Va. May 22, 2014) (noting that an inmate's "dissatisfaction with [a prison official's] responses to his grievances is a non–starter").

rights, any claim against Defendant Clarke will be dismissed. Claims III, VI, VII, IX, and X name only Defendant Clarke and will, therefore, be dismissed entirely.[11]

**D.    Remaining Eighth Amendment Claims Against Defendant Hamlette**

Although Lowe contends that some actions of Defendant Hamlette violate the Fourteenth Amendment, the Eighth Amendment governs Lowe's claims complaining about the conditions of his prior confinement. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998); *see Lewis*, 523 U.S. at 842 ("[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more general notion of substantive due process, must be the guide for analyzing these claims." (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (Rehnquist, C.J.) (plurality opinion))). Therefore, the Court addresses the remaining claims against Defendant Hamlette under the Eighth Amendment standard.

The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337 (1981). However, "[i]nmates cannot expect the amenities, conveniences and services of a good hotel . . . ." *Harris v. Fleming*,

---

[11] Although Claim III could be dismissed without prejudice, the underlying claim is entirely lacking in merit. Lowe's contends that "[s]alt and basic quantities and qualities of food were denied to prisoners." (ECF No. 38, at 11.) This claim it too vague and conclusory to state a claim for relief.

Additionally, in Claim VI, Lowe states that two officers failed to provide him with a diabetic food tray on a single day in 2019, that this violates the Americans with Disabilities Act, 42 U.S.C. § 12131, and somehow Defendant Clarke is liable for this action although he had no personal involvement. (*Id.* at 12.) However, Lowe fails to allege the bare minimum required to show that he qualifies for the protections of that Act. *See Constantine v. George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (citations omitted).

839 F.2d 1232, 1235 (7th Cir. 1988). As discussed below, although the conditions Lowe

complains of might be unpleasant, they simply do not pose a significant or serious risk of

harm to Lowe.

### 1. Blankets and Lighting

In Claims I and II, Lowe complains that Defendant Hamlette "published a

policy . . . to search and seize all blankets, coats, and protective clothing," and for "more

than 24 hours after fights and security incidents" kept "full lighting" in the facility. (ECF

No. 38, at 10.) Lowe fails to plausibly suggest that through these policies, Defendant

Hamlette knew of and disregarded a serious or significant risk of harm to Lowe. Instead,

Lowe alleges nothing more than a "routine discomfort" that is "part of the penalty that

criminal offenders pay for their offenses against society." *Strickler*, 989 F.2d at 1380 n.3

(quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Lowe also fails to allege any

injury, much less a serious or significant injury resulting from the confiscation of

blankets and coats or 24 hours of full lighting. *See De'Lonta*, 330 F.3d at 634.

Moreover, although Lowe suggests that the seizure of all blankets is a violation of

Virginia Department of Corrections's policy, an alleged violation of institutional policy

fails to state an actionable constitutional claim under § 1983. *Riccio v. Cnty. of Fairfax*,

907 F.2d 1459, 1469 (4th Cir. 1990). Accordingly, Claims I and II will be dismissed as

frivolous and for failure to state a claim.

### 2. Outdoor Exercise

In Claim IV, Lowe contends that Defendant Hamlette "reduced outside exercise below the mandatory allotment of 1 hour per day . . . for more than 45 consecutive days." (ECF No. 38, at 11.) From Lowe's allegations, it is evident that the facility was on a lockdown due to COVID–19 at the time of his complaints. *See id.* Once again, Lowe alleges nothing more than a routine discomfort, not an extreme deprivation. Lowe does not allege that he was denied any exercise, just *outdoor* exercise. However, outdoor exercise is not mandated by the Constitution. *See Norbert v. Cty. and Cnty. of San Francisco*, ---F.4th ----, 2021 WL 3779532, at *8–13 (9th Cir. Aug. 26, 2021) (citations omitted) (surveying cases and explaining that the constitution does not require outdoor exercise when other opportunities for physical exercise are available); *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015) (explaining that "there is a significant difference between a lack of outdoor recreation and an inability to exercise," and that only alleging a lack of outdoor exercise fails to state a sufficiently serious constitutional deprivation); *Wilkerson v. Maggio*, 703 F.2d 909, 912 (5th Cir. 1983) (finding "one hour a day of exercise on the indoor tier satisfied the constitutional minimum" for an inmate who was not permitted outdoor recreation for a seven-year period). Moreover, Lowe fails to allege any serious or significant injury from being denied outdoor exercise temporarily. *See De'Lonta*, 330 F.3d at 634.

Thus, Lowe fails to allege an Eighth Amendment claim. Accordingly, Claim IV lacks merit and will be dismissed.[12]

---

[12] Within this claim, Lowe contends that "staff" disabled the ventilation system after a fight. Lowe contends that this was a "retaliatory measure" that "ensured the sickness or death of an

### 3.   Denial of Toilet Paper

In Claim V, Lowe contends that Defendant Hamlette "took constructive measures

to retaliate against Mark Lowe." (ECF No. 38, at 11.) Lowe alleges that:

> The staff has violated the 8th and 14th Amendment rights of Mark Lowe.
> Major David Hamlette denied Mark Lowe access to toilet paper as a punitive,
> perverse, juvenile, racist, and retaliatory measure. In addition to the uniform
> searches for weapons or drugs, the staff searched Mark Lowe's living area
> between 12:00 am and 5 am for toilet paper. Toilet paper is not categorized
> as [a] weapon or security threat by the Department of Corrections. Toilet
> paper searches are not part of a tenable security objective when one
> individual is targeted. . . .

(*Id.* at 12.) From Lowe's vague allegations, it is unclear why Baskerville staff took toilet

paper from Lowe and why he believes this to be retaliatory. However, Lowe fails to

allege facts indicating that Defendant Hamlette was personally involved with the

deprivation of Lowe's Eighth Amendment rights through these allegations. Simply

stating that "staff" violated his Eighth Amendment rights is insufficient to impose

liability on Defendant Hamlette. *Cf. Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir.

2008) (citation omitted) (explaining that vague references to a group of "defendants,"

without specific allegations tying the individual defendants to the alleged unconstitutional

conduct, fail to state a claim against those defendants).

However, buried in a final section of his Complaint entitled, "PARTIES," Lowe

contends that Defendant Hamlette "instructed Officer Jordan not to distribute toilet paper

---

unknown number of persons due to COVID–19 virus." (ECF No. 38, at 1.) First, Lowe does not
allege facts suggesting how Defendant Hamlette was personally involved in the deprivation of
Lowe's rights. Second, Lowe identifies no injury to himself. Accordingly, this allegation will
receive no further consideration.

to the prisoner, Mark Lowe in retaliation for civil rights complaints." (*Id.* at 15.) Lowe indicates that the "surveillance system retains an image of Major David Hamlette denying toilet paper at or about 6:00 pm on April 29, 2020." (*Id.* at 5.)

Lowe fails to allege facts that would suggest that by denying Lowe toilet paper on one isolated occasion, or even on a few occasions, Defendant Hamlette knew of and disregarded a serious risk of harm to Lowe. The mere denial of toilet paper for brief periods of time fails to amount to a "denial of the minimal civilized measure[s] of life's necessities," and therefore, does not amount to a constitutional violation. *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 488 (N.D.N.Y. 2009) (citations omitted); *see Harris*, 839 F.2d at 1234–36 (denial of toilet paper for five days, and no soap, toothbrush, and toothpaste for ten days failed to state an Eighth Amendment claim). Moreover, Lowe fails to suggest that he suffered any actual injury, much less a serious or significant injury, as a result of this alleged deprivation of toilet paper. Thus, Lowe fails to state a claim for relief under the Eighth Amendment. Accordingly, Claim V is dismissed for failure to state a claim and as legally frivolous.[13]

### 4.    Masks and Laundry

---

[13] Lowe contends that Officer Jordan only gave toilet paper to white prisoners and would not give toilet paper to Lowe and that somehow this was "motivated by racial animus and a lewd perversion." (ECF No. 28, at 15.) Officer Jordan was not named as a defendant in this action. Moreover, Lowe fails to allege facts that would plausibly suggest that Officer Jordan's alleged racial animus may be imputed to Defendant Hamlette.

In Claim VIII, Lowe contends that Defendant Hamlette "took constructive measures to infect prisoners with COVID–19" because the cloth masks were washed "as a group in a washing machine [and u]sed masks were redistributed to prisoners." (ECF No. 38, at 12.)  Lowe alleges that "[t]he used mask was tainted with the COVID–19 virus" and he speculates that the "Pure Wash Eco Friendly Laundry system . . . does not use detergent or remove viruses from cloth." (*Id.* at 12–13 (internal quotation marks omitted).)  Lowe argues that because of the mask re-use Defendant Hamlette "knowingly and willingly infected almost 70% of the prison population with COVID–19." (*Id.* at 13.)[14]  The Court need not engage in an extended discussion of this frivolous claim because the "facts alleged are "clearly baseless," "fanciful," and "fantastic" all in one. *Denton*, 504 U.S. at 32–33 (quoting *Neitzke*, 490 U.S. at 325, 327–28).  Lowe's conclusory allegations are based on speculation and conjecture and are not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 681.

It is common knowledge that washing cloth masks either by hand or in a washing machine with laundry detergent kills the COVID–19 virus.[15]  Thus, Lowe's allegations

_____

[14] Buried within his Complaint in a section completely unrelated to Claim VIII, Lowe also contends that "on March 05, 2021, the Department of Corrections staff stipulated that detergent is not used in laundry." (ECF No. 38, at 9.)  Lowe contends that "[t]he staff uses an electrolysis system which adds ions to the water," that "[t]he ions cannot eliminate COVID–19 from clothing," and concludes without any measure of proof that "[t]he virus is passed from prisoner to prisoner via laundry services." (*Id.*).  Lowe was transferred from Baskerville Correctional Center to Lunenburg Correctional Center in August 2020.  Thus, he was incarcerated in Lunenburg Correctional Center on March 5, 2021 when he complains of "staff stipulat[ing]" using ions to wash clothes.  The Court fails to discern, and Lowe fails to allege, how Defendant Hamlette had any involvement in the laundry system used at Lunenburg.

[15] *See* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/about-face-coverings.html (last visited Sept. 7, 2021).

that Defendant Hamlette spread COVID–19 through mask re-use appears to be factually frivolous. Moreover, this Court has monitored the Virginia Department of Corrections ("VDOC") and its COVID response from May 2020 through June 2021, in a class action suit filed by a number of inmates, and at no time was it reported that anywhere close to 70% of inmates at any institution contracted COVID–19 or that there was a problem with the laundry system used by VDOC. *See generally Whorley v. Northam*, No. 3:20-cv-255 (E.D. Va. filed Apr. 8, 2020); *see also Hankins v. Northam*, No. 3:20-cv-300 (E.D.Va. April 24, 2020), ECF No. 15. In fact, the VDOC website indicates that since the beginning of the COVID–19 outbreak, 249 inmates in the Baskerville Correctional Center have tested positive for COVID–19 out of a total of 487 that are housed in that facility at any given time.[16] Lowe's allegations simply defy belief and do not sound in fact. Finally, Lowe fails to allege facts indicating that he personally suffered from a serious or significant injury resulting from the mask washing procedures during the period he was incarcerated in Baskerville Correctional Center, a period that ended in August 2020. *See De'Lonta*, 330 F.3d at 634. Accordingly, Claim VIII is factually and legally frivolous and will be dismissed.

## VI.   CONCLUSION

Lowe's claims will be dismissed with prejudice for failure to state a claim and as legally and factually frivolous. The action will be dismissed. The Clerk will be directed

---

[16] *See* https://vadoc.virginia.gov/news-press-releases/2021/covid-19-updates/ (last visited Sept. 8, 2021); *see also* https://www.inmateaid.com/prisons/va-doc-baskerville-correctional-center (last visited Sept. 8, 2021).

to note the disposition of the action for the purposes of 28 U.S.C. § 1915(g).  Lowe's

motions (ECF Nos. 48, 49, 50) will be denied.

The Clerk is DIRECTED to send a copy of this Memorandum Order to Plaintiff.

It is so ORDERED.

_____ /s/

HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

Date: Oct. 18, 2021
Richmond, Virginia